UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT RAY FERGUSON,<br><br>    Petitioner,<br><br>vs.<br><br>JAY CHRISTENSEN,<br><br>    Respondent. | Case No. 1:21-cv-00288-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

  Petitioner Robert Ray Ferguson (Petitioner) filed a Petition for Writ of Habeas Corpus challenging his state court conviction on grounds of ineffective assistance of trial counsel. Dkt. 3, pp. 4-17. In response, Respondent Jay Christensen (Respondent) has filed a Motion for Summary Dismissal on procedural default grounds, asserting that none of the claims in the Petition were ever presented to the Idaho Supreme Court for review, and it is now too late to do so. Dkt. 12.

  Petitioner has filed a Motion for Extension of Time to File Response and a Motion for Leave to File an Amicus Curiae Brief by Advocate David Whitecotton. Dkts. 14, 16. Both motions appear to apply to Petitioner's later filing entitled, "Rebuttal of Respondent's Motion to Dismiss," which references Mr. Whitecotton but is signed by Petitioner. Dkt. 19. The motions will be granted to the extent that the Court will consider

**MEMORANDUM DECISION AND ORDER - 1**

the responsive filing timely, whether drafted by Petitioner or another person—so long as Petitioner has signed his pro se documents himself.

All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. Dkt. 7. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having reviewed the parties' briefing and considered their arguments, the Court concludes that Petitioner's claims are procedurally defaulted and that he has not met either exception to be able to proceed on his claims.

## REVIEW OF MOTION FOR SUMMARY DISMISSAL

1. **Background**

In early 2017, Petitioner had been dating Julie Snow for several months. They met at a shelter and began living together in a rented motel room. Petitioner had proposed to Julie one month prior to the incident that was the basis for his conviction. *See* State's Lodging A-3, p. 170-71.

On January 27, 2017, Julie went out and spent time with an old friend, Danielle Washburn. Julie returned to the rented motel room that evening with Danielle so that Julie could pick up some things to spend the night at Danielle's residence. *Id.*, p. 159. The women were having a conversation; Petitioner listened to them and every now and then would interject something. Danielle and Julie spoke about their struggles with depression, and Danielle spoke of suicidal thoughts. *Id.*, pp. 195-96.

When Julie told Petitioner she was going to leave for the night with Danielle, Petitioner thought Julie was going to leave him, meaning break up with him. Julie and Danielle started to get ready to leave.

What happened next is disputed. Petitioner testified at trial that Danielle strangled him, and Danielle and Julie testified that Petitioner strangled Danielle.

It is quite clear from the record that everyone involved had been drinking—to what degree is disputed. The officer who investigated the 9-1-1 call testified at trial that Danielle and Julie were "possibly intoxicated" and "had at least consumed alcohol." State's Lodging A-3, p. 146. Julie testified that she had drunk vodka and was feeling its effects a little bit. *Id*., p. 153. Julie described herself as "a little bit buzzed." *Id*. Petitioner described Julie as "going between nodding out and waking up." *Id*., p. 275.

Julie testified that Danielle had a couple of beers before she arrived, and more beer after. Danielle's testimony implied that she had been drinking before seeing Julie, but controverted Julie on whether she drank with Julie later that night. *Id.* at 216. Danielle testified that Julie herself was an alcoholic, and that's why Julie said Danielle had been drinking with her. *Id*. Petitioner testified that he had drunk about five beers and a few shots. *Id*. at 290.

Both women testified that Petitioner got a wire (a portable "backpack saw" or "garrote wire" that has a rough edge for cutting wood) out of his backpack and gave it to Danielle, suggesting that she use it to commit suicide. Danielle testified that she

**MEMORANDUM DECISION AND ORDER - 3**

untangled it and put it against her throat to see how it would feel, but then Petitioner got up and twisted it around her neck. Danielle thought he was joking around, but then Petitioner persisted in trying to choke her. *Id.*, p. 199. Both Danielle and Julie tried to get Petitioner to release his grip on the wire. Julie jumped on Petitioner's back, wrapped her arms and hands around his neck and upper body, and tried to pull him back. Petitioner pushed Julie back, and she fell to the floor. *Id.*, p. 162-63. Petitioner put Danielle in a headlock, which choked her. *Id.*, pp. 196-203. When Danielle bit Petitioner's arm, he jumped off her and left. *Id.*, p. 167.

Julie testified that Petitioner started choking Danielle at the time he thought that Julie was leaving him. Julie tried to help him understand that they were just leaving for the night. *Id.*, p. 203. Petitioner and Danielle had never met, and so the incident made little sense without the fact that Petitioner had a motive to strangle Danielle—the person he perceived was taking away his fiancée permanently.

Petitioner testified that, when Danielle said she wanted to commit suicide, he got his wire hand saw out of his backpack and handed it to Danielle, which, he acknowledged at trial, was an unwise decision. *Id.*, p. 279. From there, the stories differ. He asserted that Danielle tried to commit suicide by strangling herself with the wire, and he jumped up to stop her. He testified that Danielle turned on him and then tried to strangle him with the wire, and they engaged in a struggle. He yelled to Julie, saying, "Julie, help me. I want to live. I want to live." *Id.*, pp. 281-85.

**MEMORANDUM DECISION AND ORDER - 4**

An investigating officer found a ligature-type mark on Danielle's neck, but none on Petitioner's neck. *See id*., pp. 232-33. Two parallel marks found on Petitioner's neck were consistent with Julie's version that she grabbed Petitioner by the neck to try to pull him away from Danielle as he was strangling her. The officer admitted on cross-examination that the mark on Danielle's neck could have been self-inflicted. *Id*., p. 148.

Petitioner was arrested for, charged with, and convicted by jury of aggravated battery and a weapon enhancement in a criminal case in the Fourth Judicial District Court in Ada County, Idaho. *See* State's Lodging A-1. He was also found guilty of being a persistent violator. *See State v. Ferguson*, 430 P.3d 894 (Idaho Ct. App. 2018). He was sentenced to a term of imprisonment of 15 years fixed, with life indeterminate.

Petitioner filed two state court appeals to challenge his conviction. First, he filed a direct appeal, raising a single issue: that the trial court committed fundamental error by failing to conduct an in-depth colloquy about his understanding of the consequences of a persistent violator sentencing enhancement before the Court accepted his admissions to the prior felonies. State's Lodging B-1, p. 8. The Idaho Court of Appeals affirmed the judgment of conviction and the Idaho Supreme Court denied his petition for review. *See* State's Lodgings B-4 through B-8.

Second, Petitioner appealed the summary dismissal of his post-conviction relief action, and was appointed an appellate attorney. *See* State's Lodging C-1. However, after reviewing Petitioner's case, his attorney filed a motion to withdraw, finding no

**MEMORANDUM DECISION AND ORDER - 5**

meritorious issues for appeal. State's Lodging D-1, p .2  The Idaho Supreme Court granted the attorney's motion to withdraw and twice notified Petitioner of the deadline for filing pro se appellate briefing. Petitioner did not file a brief, and the post-conviction appeal was dismissed. *See* State's Lodging D-2 to D-6.

## 2. Exhaustion of State Court Remedies

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in federal court. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies for a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim is considered improperly exhausted if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered "procedurally defaulted." *Coleman,* 501 U.S. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either (1) legitimate cause for the

default and prejudice resulting from the default, or, alternatively, (2) that he is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

To show "cause" for a procedural default, a petitioner ordinarily must demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray*, 477 U.S. at 496. To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The petitioner bears the burden of demonstrating that "in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327; *see also House v. Bell*, 547 U.S.

518, 539 (2006). The standard is demanding and permits review only in the "extraordinary" case. *Schlup*, 513 U.S. at 327 (citation omitted).

Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). A persuasive claim of actual innocence must be based on new evidence that was not presented to the jury that is so compelling that the reviewing court must conclude that it is now probable that no rational juror would vote to convict the defendant. *House*, 547 U.S. at 538-39.

3. Discussion

This procedural issue in this case is straightforward: Petitioner proceeded to the state appellate courts twice to challenge his conviction and sentence. On direct appeal, the claim was not the same as those he brings here. While Petitioner's pro se post-conviction petition did raise some of his ineffective assistance of trial counsel claims, his appellate counsel found no appealable claim worthy to present on appeal and withdrew from representation. Petitioner failed to file a pro se appellate brief to properly present his ineffective assistance of trial counsel claims to the Idaho Supreme Court.

Clearly, the Idaho Supreme Court had no opportunity to hear and decide Petitioner's constitutional claims. It is now too late for Petitioner to return to state court

**MEMORANDUM DECISION AND ORDER - 8**

to exhaust his claims. Therefore, the claims are procedurally defaulted for purposes of this action.

Petitioner was advised of the standard of law for procedural default and its exceptions in the Initial Review Order and in Respondent's Motion for Summary Dismissal briefing. Petitioner has provided nothing showing that he can meet the cause and prejudice standard. Nor does the Court's independent review of the record reveal anything that would support a cause and prejudice argument. As to cause, it was Petitioner's own fault that he did not submit briefing to support his post-conviction appellate claims after withdrawal of his counsel was permitted. As to prejudice, even though Petitioner's trial counsel did not pursue cross-examination in a detailed or aggressive manner, he still made some key points with each witness that supported Petitioner's version of events. Petitioner has not come forward with any significant facts showing that he was prejudiced by something his counsel missed.

Petitioner's rebuttal briefing focuses on the miscarriage of justice exception. He argues that the prosecutor committed prosecutorial misconduct by leading the witnesses at trial. However, leading witnesses at trial does not show that Petitioner is actually innocent. Rather, "leading a witness" is a legal argument unless it is shown that the prosecutor led the witness to untrue facts. That is not supported by the trial record. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 64, 623 (1998).

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner also argues that the following facts show that he is actually innocent: the victim and witness changed their stories several times; the victim and witness were drinking alcohol at the time of the incident; and that the photographs show that the victim could have inflicted the wound herself. These assertions do not meet the *Schlup* standard, which requires a proffer of evidence that the jury did *not* consider.

Petitioner's counsel cross-examined the victim and witness about discrepancies in their stories. Importantly, Petitioner's counsel got Danielle to admit that it was "possible" that she jumped on Petitioner during the altercation, which supports Petitioner's version of events. *Id.*, pp. 226-27. As outlined above, the jury knew that Julie and Danielle been drinking. The officer testified that Danielle could have inflicted the wound herself, and the victim herself admitted that she passed the wire over her own throat to see how it felt.

None of this evidence is new, compelling, or extraordinary. *See House*, 547 U.S. at 539; *Schlup*, 513 U.S. at 327. Petitioner argues only that the jury should have believed his version of events. The jury was able to evaluate the demeanor and motives of each person who testified, including Petitioner. Julie's testimony was key, as she had loyalties to both her fiancé and her friend, and her testimony aligned with her friend's version of events. A habeas proceeding is not a proper forum in which to re-litigate an entire case that has already been tried. Instead, "[w]hen confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict." *House v. Bell*, 547 U.S. at 539.

The record here supports the verdict. At sentencing, the state district judge addressed this same argument:

> I know that you testified that you were innocent of those charges. And I listened to your testimony, as I listened to the rest of the evidence at trial I share the jury's view of the evidence that you are guilty beyond a reasonable doubt of what the State accused you of. As the prosecutor said, I'm not really sure how you escalate from there. It's really just luck that that lady is not dead.

*Id.*, p. 360. This Court agrees with the impression of the state district court as to the lack of evidence in the record pointing to Petitioner's innocence.

### 4. Conclusion

All of the claims are procedurally defaulted. Cause and prejudice has not been shown, nor has actual innocence. Accordingly, the entire Petition is subject to dismissal with prejudice.

**ORDER**

**IT IS ORDERED:**

1. Petitioner's Motion for Extension of Time to File Response (Dkt. 14) is GRANTED. The Rebuttal filed at Docket 19 is considered timely.

2. Petitioner's Motion for Leave to File an Amicus Curiae Brief by Advocate David Whitecotton (Dkt. 16) is GRANTED, to the extent that the Court has considered Mr. Whitecotton's arguments contained in the Rebuttal.

3. Respondent's Motion for Summary Dismissal (Dkt. 12) is GRANTED.

The record here supports the verdict. At sentencing, the state district judge addressed this same argument:

> I know that you testified that you were innocent of those charges. And I listened to your testimony, as I listened to the rest of the evidence at trial I share the jury's view of the evidence that you are guilty beyond a reasonable doubt of what the State accused you of. As the prosecutor said, I'm not really sure how you escalate from there. It's really just luck that that lady is not dead.

*Id.*, p. 360. This Court agrees with the impression of the state district court as to the lack of evidence in the record pointing to Petitioner's innocence.

### 4. Conclusion

All of the claims are procedurally defaulted. Cause and prejudice has not been shown, nor has actual innocence. Accordingly, the entire Petition is subject to dismissal with prejudice.

**ORDER**

**IT IS ORDERED:**

1. Petitioner's Motion for Extension of Time to File Response (Dkt. 14) is GRANTED. The Rebuttal filed at Docket 19 is considered timely.

2. Petitioner's Motion for Leave to File an Amicus Curiae Brief by Advocate David Whitecotton (Dkt. 16) is GRANTED, to the extent that the Court has considered Mr. Whitecotton's arguments contained in the Rebuttal.

3. Respondent's Motion for Summary Dismissal (Dkt. 12) is GRANTED.

4. The Petition for Writ of Habeas Corpus (Dkt. 3) is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: September 28, 2022

_____
Honorable Debora K. Grasham
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 12